UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANDREW L. WOODS,

      Plaintiff,

v.                        Case No: 2:16-cv-897-FtM-29MRM

RADIATION THERAPY SERVICES,
INC., a Florida Corporation,

      Defendant.

_____

**OPINION AND ORDER**

     This matter comes before the Court on plaintiff's Motion to Remand (Doc. #14) filed on January 18, 2017. Defendant filed a Memorandum in Opposition (Doc. #24) on February 1, 2017. The Court heard oral argument on February 6, 2017. For the reasons set forth below, the Motion to Remand is denied.

**I.**

     On November 18, 2016, Plaintiff Andrew L. Woods (plaintiff or Woods) filed a three-count Complaint (Doc. #2) against defendant Radiation Therapy Services, Inc. d/b/a 21st Century Oncology (defendant or 21st Century) in the Circuit Court of the Twentieth Judicial Circuit in and for Lee County, Florida. Count I alleges numerous breaches of an employment agreement; Count II seeks a declaratory judgment stating that plaintiff is excused from signing a release otherwise required under the agreement to collect certain termination benefits; and Count III seeks a declaratory

judgment stating that plaintiff has not engaged in any "prohibited activities" under the agreement.

There is no basis for federal jurisdiction explicitly pled on the face of the Complaint.  Notwithstanding, on December 19, 2016, defendant filed a Notice of Removal (Doc. #1) asserting that federal subject matter jurisdiction exists because portions of plaintiff's claims are completely preempted by the Employee Retirement Income Security Act (ERISA) and thus "arise under" federal law.

Plaintiff moves to remand his lawsuit to state court on the ground that the Notice of Removal mischaracterizes his claims, none of which are preempted by ERISA, and there thus exists no basis for federal jurisdiction. Specifically, plaintiff contends that he does not request an award of benefits due under an ERISA-governed plan but rather seeks payments due under, and declarations as to certain obligations imposed by, a separate, non-ERISA employment contract.  (Doc. #14, pp. 3-4.)

Not surprisingly, defendant opposes remand.  Defendant argues primarily that "the Employment Agreement is an ERISA plan" itself (Doc. #24, p. 10), and that the relief plaintiff seeks is "akin to that available" under ERISA.  (Id. p. 3.)  This results, Defendant argues, in federal question jurisdiction.  (Id.)

## II.

Under the federal removal statute, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant" to federal court.   28 U.S.C. § 1441(a).   District courts have original jurisdiction over claims "arising under the Constitution, laws, or treaties of the United States."   28 U.S.C. § 1331.   Under the longstanding well-pleaded complaint rule, a suit "arises under" federal law "only when the plaintiff's statement of his own cause of action shows that it is based upon [federal law]."   Vaden v. Discover Bank, 556 U.S. 49, 60 (2009) (citation omitted).   As such, "a complaint alleging only state law claims is not removable to federal court based on federal subject matter jurisdiction."   Gables Ins. Recovery, Inc. v. Blue Cross & Blue Shield of Fla., Inc., 813 F.3d 1333, 1337 (11th Cir. 2015).

There is, however, a narrow "qualification to the well-pleaded complaint rule . . . known as 'complete preemption' or 'super preemption.'"   Kemp v. Int'l Bus. Machs. Corp., 109 F.3d 708, 712 (11th Cir. 1997).   Complete preemption exists where "the law governing the complaint is exclusively federal," Vaden, 556 U.S. at 61 (citation omitted), and "the preemptive force of a federal statute is so extraordinary that it converts an ordinary state law claim into a statutory federal claim."   Conn. State Dental Ass'n v. Anthem Health Plans, Inc., 591 F.3d 1337, 1343

(11th Cir. 2009) (citing <u>Caterpillar</u>, 482 U.S. at 393)).   Where
the doctrine applies, the defendant may remove the case to federal
court.   <u>Kemp</u>, 109 F.3d at 712.

"State law claims can be subject to the doctrine of complete
preemption under ERISA."   <u>Gables</u>, 813 F.3d at 1383.   Complete
preemption exists under ERISA where the plaintiff asserts a state
law claim seeking relief otherwise available under ERISA's civil
enforcement provision, 29 U.S.C. § 1132(a).   <u>Conn. State Dental
Ass'n</u>, 591 F.3d at 1344.   This provision – generally referred to
as Section 502(a) - creates a private right of action for a plan
participant or beneficiary "to recover benefits due to him under
the terms of his plan, to enforce his rights under the terms of
the plan, or to clarify his rights to future benefits under the
terms of the plan."   29 U.S.C. § 1132(a)(1)(B).   Where it is
determined that the plaintiff's state law claims effectively seek
Section 502(a) relief, those claims "are recharacterized as ERISA
claims and therefore 'arise under' federal law" for removal
purposes.   <u>Kemp</u>, 109 F.3d at 712 (citations omitted).

Whether complete preemption exists under ERISA in a
particular case is governed by the test described in <u>Aetna Health
Inc. v. Davila</u>, 542 U.S. 200 (2004), and adopted by the Eleventh
Circuit in <u>Connecticut State Dental Association</u>, 591 F.3d at 1345.
<u>Ehlen Floor Covering, Inc. v. Lamb</u>, 660 F.3d 1283, 1287 (11th Cir.
2011).   "The <u>Davila</u> test asks (1) whether the plaintiffs could

have ever brought their claim under ERISA § 502(a) and (2) whether no other legal duty supports the plaintiffs' claim." Id.  Whether a plaintiff could have brought his claim under Section 502(a) itself "entails two inquiries: first, whether the plaintiff['s] claims fall within the scope of ERISA § 502(a), and second, whether ERISA grants the plaintiff[] standing to bring suit." Id. (citing Conn. State Dental Ass'n, 591 F.3d at 1350).  If a state law claim satisfies the Davila test, the district court must recharacterize the appropriate portion of the claim as an ERISA cause of action and retain jurisdiction; if the claim does not satisfy Davila, no federal question jurisdiction exists, and the case is remanded to state court.  Stern v. Int'l Bus. Machs. Corp., 326 F.3d 1367, 1371 (11th Cir. 2003).

Because Woods's claims are paramount in determining whether complete preemption exists, the Court begins its jurisdictional analysis by discussing the claims pled in his complaint, and then turns to whether one or more of those claims satisfy Davila.

### III.

### A.    Plaintiff's Claims

According to the Complaint, plaintiff is a former employee of 21st Century whose employment was terminated without cause on September 23, 2016, as part of a corporate restructuring.  (Doc. #2, ¶¶ 2, 60.)  The basis for plaintiff's lawsuit is 21st Century's subsequent refusal to pay him certain post-termination sums he

contends are due under the terms of the parties' May 13, 2013 Amended and Restated Executive Employment Agreement (Employment Agreement or Agreement) (Doc. #1-1), namely: (1) his $2 million severance; (2) COBRA benefits applicable to him and his dependents, and (3) earned but deferred incentive bonuses totaling $9 million. (Doc. #2, ¶¶ 2, 5.)

In relevant part, the Employment Agreement provides for the Employment of Woods by 21st Century during a Term of Agreement; sets the Executive Compensation, which includes an Annual Base Salary and certain Performance Incentives and Other Bonuses; provides for Additional Compensation and Benefits, which includes Woods' Participation in Benefit Plans, Vacation, Business Expenses, Equity, and Expenses of this Agreement; provides for Payments upon Termination, which covers Involuntary Termination, Termination for Cause, and Voluntary Termination by Woods, and addresses Severance Payments, Disability, and a Release required to obtain benefits other than Accrued Compensation; provides for Protection of Confidential Information; and describes the Prohibition of Certain Activities.[1]  (Doc. #1-1, §§ 1-9.)

Under the Agreement's Employment provision, Woods agreed to serve as the Company's Executive Vice President for Governmental Affairs and Senior Vice President for Business Development.  (Id.

---

[1] Certain words have been capitalized to reflect that they are defined terms or section headings in the Employment Agreement.

§ 1.)  The Initial Term of his employment was five years, beginning on May 1, 2013. (Id. § 2.)  At the end of the five-year term, the Employment Agreement would automatically extend for successive two-year terms, subject to termination upon 120 days' written notice by either party.  (Id.)  Notwithstanding these provisions, 21st Century was entitled to immediately terminate the Employment Agreement at any time before the end of the Initial Term or any Renewal Term, but was required to make the payments discussed in the Payments upon Termination provision. (Id.)  Upon receipt of such Payments, plaintiff was contractually bound to abstain from certain Prohibited Activities for two years.  (Id. § 9.)

As part of the Executive Compensation, plaintiff received an annual base salary of not less than $1 million, payable in normal payroll installments.  (Id. § 3(a).)  Plaintiff was also entitled to the following incentive bonuses:  (1)  a $5 million incentive bonus "for achievement during the Term of a freeze on reductions in Medicare reimbursement to freestanding radiation therapy centers except for those reductions negotiated on behalf of" 21st Century; (2) a $2.5 million incentive bonus for "achievement during the Term of adoption of a new, multi-bundled payment system for freestanding radiation therapy centers, to which 21st Century elects not to participate"; and (3) a $2.5 million incentive bonus "upon [21st Century's]  initial election to participate in any way in the [new, multi-bundled payment system]."  (Id. § 3(b).)

Plaintiff was also entitled to five additional items of Additional Compensation and Benefits. First, plaintiff was eligible to participate in employee benefit plans and programs maintained by 21st Century, including "life, medical, dental, accidental and disability insurance and profit sharing, pension, retirement, savings, stock option, incentive stock and deferred compensation plans." (Id. § 4(a).) Second, plaintiff was entitled to at least six weeks' vacation. (Id. § 4(b).) Third, plaintiff was to be reimbursed for all reasonable expenses he incurred in promoting 21st Century's business. (Id. § 4(c).) Fourth, plaintiff was to be granted certain equity interests in the Company, as provided for in a separate Letter Agreement. (Id. § 4(d).) Finally, plaintiff was entitled to reimbursement for up to $15,000 of the reasonable attorneys' fees incurred in connection with his negotiation of the Employment Agreement. (Id. § 4(e).)

The Employment Agreement also contains a Payments upon Termination provision addressing multiple scenarios. In case of any Involuntary Termination by 21st Century during the Term, plaintiff was entitled to receive Accrued Compensation consisting of his Base Salary, unreimbursed expenses, and any non-forfeitable benefits already earned and payable to him under the terms of any deferred compensation, incentive, or other benefits plan

maintained by 21st Century.[2]   (Id. §5(a).)   In case of a
Termination for Cause by 21st Century, plaintiff was entitled to
receive the Accrued Compensation only.[3]   (Id. § 5(d).)   However,
if plaintiff's employment was terminated by 21st Century without
Cause, then plaintiff was also entitled to receive any deferred
payments of performance incentive bonuses pursuant to Section
3(b), twenty-four monthly severance payments equal to 1/24 of his
Base Pay, and up to twelve months of COBRA premium payments.[4]   (Id.
§ 5(b).)   In order to receive severance payments and benefits
other than Accrued Compensation however, plaintiff had to first
execute a Release of claims in favor of 21st Century within sixty
days of termination or otherwise waive the right to receive those
payments and benefits.   (Id. § 5(f).)

Plaintiff's first cause of action, breach of contract,
alleges that 21st Century has breached the Employment Agreement by
failing to pay him: 1) $2 million in severance payments, now due
in a lump sum; 2) twelve months of COBRA premiums, now due in a

---

[2] The Employment Agreement also addresses Voluntary Termination by
the Executive (Doc. #1-1, § 5(e)), but that provision is not
relevant to whether complete preemption exists here.

[3] The Employment Agreement defines "Cause" (id. § 5(d)), but the
definition is also immaterial to the issue now before the Court.

[4] "[T]he Consolidated Omnibus Budget Reconciliation Act of 1985
(COBRA) authorizes a qualified beneficiary of an employer's group
health plan to obtain continued coverage under the plan when he
might otherwise lose that benefit for certain reasons, such as the
termination of employment." Geissal v. Moore Med. Corp., 524 U.S.
74, 76 (1998).

lump sum; 3) the $4 million balance of a deferred incentive bonus for achievement of a freeze on reductions in Medicare reimbursement to freestanding radiation therapy centers; (4) the $2.5 million balance of another deferred incentive bonus for achievement of the adoption of a new, multi-bundled payment system for freestanding radiation therapy centers; and (5) the $2.5 million balance of a third deferred incentive bonus earned for 21st Century's election to participate in the new, multi-bundled payment system for freestanding radiation therapy centers. (Doc. #2, ¶¶ 77, 80, 81.) Plaintiff also asserts that 21st Century breached the agreement by failing to grant him the certain equity interests. (Id. ¶ 82.) The Complaint's two other causes of action seek declarations that, in light of those breaches: i) plaintiff is excused from signing the Release until he receives his severance benefits and the twelve months of COBRA premium payments, and ii) the two-year period for the Prohibited Activities provision remains tolled until 21st Century makes the payments.

**B.**   **_Davila_ Step One: Could Plaintiff Have Brought His State Law Claims under ERISA Section 502(a)?**

As previously discussed, in order to show that a state law claim is completely preempted under ERISA and therefore removable to federal court, the defendant must first establish that the plaintiff, "at some point in time, could have brought his claim under ERISA § 502(a)(1)(B)." _Davila_, 542 U.S. at 210. This is a two-pronged inquiry turning on both the nature of the claims and

the plaintiff's standing to pursue an ERISA action.  <u>Ehlen</u>, 660 F.3d at 1287.

### 1) First Step-One Inquiry: Is this a Suit for "Benefits" Due Under an ERISA "Plan"

ERISA Section 502(a)(1)(B) empowers a "participant or beneficiary" to bring a civil action "to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. 1132(A)(1)(B).  As the statutory language indicates, a relevant ERISA "plan" must exist before ERISA's civil remedies are implicated.  <u>Butero v. Royal Maccabees Life Ins. Co.</u>, 174 F.3d 1207, 1212 (11th Cir. 1999); <u>see also</u> <u>Whitt v. Sherman Int'l Corp.</u>, 147 F.3d 1325, 1330 (11th Cir. 1998). Second, "the complaint must seek compensatory relief akin to that available under [Section 502(a)]," that is, to recover benefits due or enforce or clarify rights arising under the ERISA plan. <u>Butero</u>, 174 F.3d at 1212 (citations omitted).

The parties dispute whether an applicable ERISA "plan" exists under which plaintiff seeks to recover benefits due.  The statute defines "plan" as "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan."  29 U.S.C. § 1002(3); <u>see also</u> <u>Kemp</u>, 109 F.3d at 712 ("The term 'plan' as used in ERISA means an 'employee welfare benefit plan' (or an employee

pension benefit plan[)] . . . .").   "Employee welfare benefit plan" specifically encompasses:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. §1002(1).[5]

Defendant's Notice of Removal bases removal largely on plaintiff's group health benefit plan (Group Health Plan) (Doc. #1-3), under which Woods received health coverage while employed by 21st Century.  (Doc. #1, ¶ 6.)  The Notice also asserts that "Plaintiff's claim for Severance benefits is also squarely within ERISA and is removable."  (Id. ¶ 11.)

In moving to remand, plaintiff has not disputed that the Group Health Plan is an ERISA plan but argues that he is not seeking any benefits under that plan.  (Doc. #14, p. 7.)  Plaintiff argues

---

[5] 21st Century does not contend that the Employment Agreement constitutes an "employee pension benefit plan" under 29 U.S.C. § 1002(2)(A).

further that claims for severance benefits are not removable because "ERISA does not preempt employee *benefits*, but employee benefit *plans*." (Id. p. 9.)

In response, defendant contends that the "Complaint seeks severance benefits and COBRA premiums that arise under both the group health plan **and** the Employment Agreement" and asserts that removal was proper because "[b]oth plans are ERISA Plans." (Doc. #24, p. 12.) At oral argument, the parties focused on whether the Employment Agreement is an ERISA plan. Accordingly, and because it is dispositive on the jurisdictional issue, the Court discusses complete preemption only as to the Employment Agreement, not the Group Health Plan.[6]

"ERISA coverage within a multibenefit plan does not reach beyond the benefits described in § 1002(1). That means non-ERISA benefits do not fall within ERISA's reach merely because they are included in a multibenefit plan along with ERISA benefits." Kemp, 109 F.3d at 713. However, individual benefits contained in a multibenefit document can *themselves* constitute a "plan" under ERISA. Williams v. Wright, 927 F.2d 1540 (11th Cir. 1991) (treating certain retirement benefits contained in a letter formalizing those benefits as ERISA "plans"); see also Kemp, 109

---

[6] In any case, the Complaint does not appear to seek benefits due under the Group Health Plan. At most, certain of plaintiff's claims may be "related" to that plan, which would support only a theory of non-jurisdictional "defensive preemption." See Conn. State Dental Ass'n, 591 F.3d at 1344.

F.3d at 713-14 (analyzing whether certain ERISA benefits constituted a "plan within a plan"); cf. Massachusetts v. Morash, 490 U.S. 107, 116 (1989) ("[P]lans to pay employees severance benefits, which are payable *only* upon termination of employment, are employee welfare benefit plans within the meaning of the Act." (citations omitted)).   The question here is thus whether the $2 million severance and the COBRA premium payments set forth in the Employment Agreement and described in Paragraphs 77a, 77b, and 81 of the Complaint constitute "employee welfare benefit plans" under ERISA Section 1002(1).[7]

The case of Donovan v. Dillingham, 688 F.2d 1367 (11th Cir. 1982) (en banc), "provides a useful framework for examining, in light of all circumstances, whether an ERISA plan exists when that question is in doubt."   Stern, 326 F.3d at 1373.   Under Donovan, five requirements must be established before a benefit arrangement will be said to constitute an employee welfare benefit plan under ERISA: "(1) a 'plan, fund, or program' (2) established or maintained (3) by an employer  . . . (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits . . . or severance benefits (5) to participants or their beneficiaries." 688 F.2d at 1371.   This is a "flexible analysis consistent with

---

[7] Defendant does not contend that plaintiff's other breach of contract theories seek benefits due under an ERISA plan.

the legislative approach to ERISA" that coverage "be construed liberally to provide the maximum degree of protection to working men and women." Williams, 927 F.2d at 1543 (quoting S.Rep. No. 93-127 (1973), reprinted in, 1974 U.S.C.C.A.N. 4838, 4854); see also Whitt, 147 F.3d at 1330. Even if all five criteria are satisfied in theory, ERISA will only apply if the plan *actually* provides benefits to at least one non-owner employee. 29 C.F.R. § 2510.3-3(b); Slamen v. Paul Revere Life Ins. Co., 166 F.3d 1102, 1104 (11th Cir. 1999). The Court now considers whether application of Donovan's flexible framework supports the existence of an ERISA plan on which 21st Century properly based removal.

### a)   "A Plan, Fund, or Program"

"[A] 'plan, fund, or program' under ERISA is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." Stern, 326 F.3d at 1373 (quoting Donovan, 688 F.2d at 1373). "[N]o single act in itself necessarily constitutes the establishment of the plan, fund, or program." Donovan, 688 F.2d at 1373. "Rather, 'it is the reality of a plan and not the decision to extend certain benefits that is determinative.'" Moorman v. UnumProvident Corp., 464 F.3d 1260, 1265 (11th Cir. 2006) (quoting Donovan, 688 F.2d at 1373). The employer need not "play any role in administering the [benefits in order for there to be] an ERISA employee welfare

benefit plan," <u>Randol v. Mid-W. Nat. Life Ins. Co. of Tenn</u>, 987 F.2d 1547, 1550 n.5 (11th Cir. 1993) (citing <u>Donovan</u>, 688 F.2d at 1374), and the existence of a plan, fund, or program does not does not turn on whether the plan provider intended the provisions at issue be subject to ERISA; the question is instead whether the provider intended to establish or maintain a plan to provide benefits to an employee as part of the employment relationship. <u>Anderson v. UNUM Provident Corp.</u>, 369 F.3d 1257, 1263-64 (11th Cir. 2004); <u>Donovan</u>, 688 F.2d at 1372-74.

Consequently, although "[t]he way in which an employer characterizes its plan may be one factor, among others, in determining ERISA coverage," neither the employer's treatment of the plan nor the "mere labeling of the plan . . . determine[s] whether ERISA applies." <u>Stern</u>, 326 F.3d at 1374; <u>see also</u> <u>McMahon</u>, 162 F.3d at 38; <u>Whitt</u>, 147 F.3d at 1331. Thus, so long as 21st Century created "a system of providing benefits pursuant to a written instrument," then there exists an applicable "plan, fund or program," even though the Employment Agreement is not labeled as an ERISA plan, and regardless of whether 21st Century intended for ERISA to apply when it contracted to provide certain post-termination benefits to Woods. <u>Donovan</u>, 688 F.2d at 1372; <u>see also</u> <u>Stern</u>, F.3d at 1374.

The Court concludes that the $2 million severance and the COBRA premium payments provided for in the Employment Agreement

and described in Paragraphs 77a, 77b, and 81 of the Complaint satisfy <u>Donovan</u>'s definition of a "system of providing benefits pursuant to a written instrument" and thus constitute a "plan, fund or program." First, a reasonable person can deduce that the intended benefits are twenty-four monthly severance payments and up to twelve monthly COBRA premium payments. Second, a reasonable person can ascertain that the "class of beneficiaries" consists of Woods, the sole Employment Agreement participant.[8] Third, a reasonable person can ascertain that the source of the financing is 21st Century's general corporate assets, since it is "the Company" which agrees to pay the benefit amounts.[9] (Doc. #1-1, § 5(b).) Fourth, a reasonable person can ascertain the clear procedures for receiving the benefits, which are set forth in Section 5(f) of the Employment Agreement.[10]

Plaintiff argues that the Supreme Court's decision in <u>Fort Halifax Packing Co., Inc. v. Coyne</u> precludes a finding that these benefits constitute an ERISA plan, since, in plaintiff's view, neither payment is part of an "ongoing administrative program."

---

[8] Under ERISA, only a single identifiable employee is required for a "class of beneficiaries" to exist. <u>Williams</u>, 927 F.2d at 1545; <u>see also</u> <u>Slamen</u>, 166 F.3d at 1104.

[9] Financing through the general assets of a company "does not affect the threshold question of ERISA coverage." <u>Williams</u>, 927 F.2d at 1544.

[10] Indeed, plaintiff seemingly attempted to follow these procedures upon termination. (Doc. #2, ¶ 88; pp. 57-59.)

(Doc. #14, pp. 9-12.)   In that case, the state of Maine sued to enforce a state statute requiring an employer to provide a one-time severance payment to certain employees after the employer closed its plant.   _Fort Halifax_, 482 U.S. at 4-5.   Seeking to avoid that obligation, the defendant-employer argued, inter alia, that because severance is a benefits covered in the ERISA statute, Maine's law was preempted and thus unenforceable.[11]   _Id._ at 6.   The Supreme Court disagreed.   Although the Court acknowledged that severance is an ERISA benefit, it concluded that "[t]he theoretical possibility of a one-time obligation in the future" – the arrangement imposed under the Maine statute – "simply creates no need for an ongoing administrative program for processing claims and paying benefits" and thus does not "constitute[] the operation of a benefit plan" under ERISA.   _Id._ at 12.

Where, in contrast, payment of a benefit "involve[s] a continuing obligation necessitating ongoing, though simple, procedures," _Fort Halifax_ does not apply.   _Williams_, 927 F.2d at 1544 (ERISA plan existed where benefits were paid monthly and employer retrained ability to revise benefits).   Such is the case here.   The benefit distribution schemes set forth in the parties' Employment Agreement create ongoing obligations similar to that in _Williams_ and distinct from the one-time payment at issue in _Fort_

---

[11] _Fort Halifax_ involved defensive preemption under 29 U.S.C. § 1144(a), not complete preemption.   482 U.S. at 8.

Halifax.[12]  Specifically, Section 5(b) provides for i) distribution of severance benefits in 24 monthly payments, each equal to 1/24 of Woods's annual Base Salary, and ii) payment by 21st Century on a monthly basis of "the same monthly premium costs for COBRA continuation coverage as it pays of the monthly premium costs for medical coverage for senior executives and their dependents generally," during the period Woods actually continued his COBRA coverage, but not to exceed twelve months.  (Doc. #1-1, § 5(b).) Each severance payment is conditioned upon plaintiff's continued compliance with his obligations under Sections 8 (Protection of Confidential Information) and 9 (Prohibition of Certain Activities) of the Employment Agreement.  21st Century also has the right to "unilaterally eliminate or amend [the COBRA premium payments] in its sole discretion," if it believes the payments violate the Public Health Service Act. (Id.)

In light of these continuing obligations – over which defendant is afforded a measure of discretion – the Court concludes that Fort Halifax does not preclude a finding that the severance and COBRA premium provisions in the Employment Agreement constitute a "plan, fund, or program" under Donovan.

---

[12] Due to the passage of time since his termination, plaintiff now seeks payment of his severance benefits and COBRA premiums in a lump sum, but the Agreement itself provides for continuous monthly payments over a period of months or years.

### b)   **"Established or Maintained"**

"A plan is 'established' when there has been some degree of implementation by the employer going beyond a mere intent to confer a benefit." <u>Butero</u>, 174 F.3d at 1214 (citing <u>Whitt</u>, 147 F.3d at 1331; <u>Donovan</u>, 688 F.2d at 1373).   To "maintain" a plan simply means to "continue" a plan. <u>Anderson</u>, 369 F.3d at 1265.   21st Century indisputably "established" a plan, fund or program when it *executed* the Employment Agreement containing the severance and COBRA premium payment provisions. <u>Id.</u>   Given that those provisions remained in effect through plaintiff's termination and their validity was endorsed by 21st Century's attorney subsequent to plaintiff's termination (Doc. #2, p. 61), the Court finds 21st Century also "maintained" that benefit plan.

### c)   **"By an Employer"**

"ERISA does not apply unless the employer itself established or maintained the plan." <u>Anderson</u>, 369 F.3d at 1263.   This requirement "is designed to ensure that the plan is part of an employment relationship." <u>Id.</u>   There is no dispute that the entity who established and maintained the Employment Agreement – 21st Century – was plaintiff's employer, and that the Agreement itself was established and maintained in the context of plaintiff's employment with 21st Century.

### d) "For the Purpose of Providing" Specific Types of Benefits

A plan is an "employee welfare benefit plan" to the extent - and only to the extent - that it is maintained for the purpose of providing the types of benefits that Congress decided to protect when enacting ERISA. Kemp, 109 F.3d at 713. The two types of benefits 21st Century contends constitute an ERISA plan - the COBRA premiums and the severance payments - each comes under ERISA's protective umbrella. Donovan, 688 F.2d at 1371 (listing "severance benefits" among those protected under ERISA)[13]; Williams, 927 F.2d at 1542 n.3, 1549 n.17 (concluding that certain life and health insurance benefits provided for in a multibenefit written instrument - including a promise to pay "all premiums [for the plaintiff and his wife] on the company's group medical insurance plan" - were "entitled to ERISA coverage"); see also O'Connor v. Commonwealth Gas Co., 251 F.3d 262, 270 (1st Cir. 2001) ("[T]he payment of COBRA premiums . . . probably falls within ERISA's protections. If the mere continuation of coverage under COBRA would implicate ERISA, then an employer's premium payments to facilitate that coverage seemingly would as well."). Accordingly, the fourth Donovan requirement is satisfied.

---

[13] Although "severance" is not among the benefits listed by name in Section 1002(1), it is a "benefit described in [29 U.S.C. §] 186(c)" and thus constitutes an enumerated ERISA benefit under 29 U.S.C. § 1002(1)(B). See Morash, 490 U.S. at 113 n.8; Donovan, 688 F.2d at 1371 n.4.

e) **"To Participants or Their Beneficiaries"**

The identity of the recipient of severance benefits and COBRA premium payments under the Employment Agreement is clear: plaintiff Woods. As noted earlier, ERISA requires only a single identifiable plan participant. <u>Williams</u>, 927 F.2d at 1545; <u>Slamen</u>, 166 F.3d at 1104.

The Court finds that all five <u>Donovan</u> requirements are met here. The severance and COBRA premium provisions of the Employment Agreement constitute "employee welfare benefit plans" affording plaintiff the ability to pursue a claim under ERISA Section 502(a) for breaches of the contractual obligation to pay those benefits.[14] And because plaintiff actually attempted to collect payment of those benefits, the first prong under <u>Davila</u> step one is satisfied. <u>See</u> 29 C.F.R. § 2510.3-3(b); <u>Slamen</u>, 166 F.3d at 1104.

2) **Second Step-One Inquiry - Does Plaintiff Have Standing?**

The second component of the first <u>Davila</u> step is that a plaintiff have standing to assert a claim under ERISA Section 502(a). Neither party disputes that Woods, as the "beneficiary" under the Employment Agreement, has standing under ERISA. The Court agrees. 29 U.S.C. § 1132(a)(1); <u>Borrero</u>, 610 F.3d at 1301.

---

[14] Insofar as Counts II and III of the complaint seek declarations of Woods's "rights under the terms of" those benefit provisions, they too could have been brought under ERISA Section 502(a). 29 U.S.C. § 1132(a)(1)(B).

**C.   Davila Step Two: Does a Separate Legal Duty Support Plaintiff's Claims?**

Although the court has concluded that Woods's breach of contract claim satisfies step one under Davila, such claim will not be completely preempted, and federal subject matter jurisdiction will not exist, unless there is "no other independent legal duty that is implicated by [21st Century's] actions." Davila, 542 U.S. at 212; see also Borrero, 610 F.3d at 1304 ("The test in Davila is conjunctive – both conditions must be satisfied for a claim to be completely preempted.").

The question, therefore, is whether 21st Century's failure to pay Woods the severance and COBRA premiums he claims are due violates a legal duty that exists independently of ERISA and the Employment Agreement.   Plaintiff argues that "there is an independent legal duty implicated by [21st Century's] actions – namely, breach of contract."   (Doc. #14, p. 2.)   But there is not. Because the Court has concluded that the very contractual provisions 21st Century is accused of breaching themselves constitute "employee welfare benefit plans," the denial of those ERISA benefits and the contractual obligation to provide those benefits are "inextricably intertwined," negating the existence of any independent contractual duty.   Arditi v. Lighthouse Int'l, 676 F.3d 294, 299 (2d Cir. 2012), as amended (Mar. 9, 2012) (breach of contract claims completely preempted under Davila); see also Conn. State Dental Ass'n, 591 F.3d at 1353 (breach of contract claims

based on denial of payment of ERISA benefits "arise solely under ERISA or ERISA plans and not from any independent legal duty"); Borrero, 610 F.3d at 1304 (concluding that "state law claims[] based predominately on contracts" sufficiently "implicate[d] legal duties dependent on the interpretation of an ERISA plan" and were thus completely preempted).

Because the Court concludes that at least a portion of the Complaint is completely preempted under ERISA, to the extent plaintiff wishes to continue this lawsuit, he is directed to file an amended complaint repleading those portions of his claims as ERISA claims, within fourteen days of the date of this Order.

Accordingly, it is hereby

**ORDERED:**

1.    Plaintiff's Motion to Remand (Doc. #14) is **DENIED.**

2.    **Within fourteen days of the date of this Order**, plaintiff shall file an amended complaint repleading those state law claims which could have been brought under ERISA Section 502(a), 29 U.S.C. 1132(a), as ERISA claims.

**DONE and ORDERED** at Fort Myers, Florida, this 24th day of February, 2017.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record

- 24 -